THE COMMERCIAL BANK OF N. ORLEANS *v.* JOHN ROUTH et al.

*An endorsement of a note executed by an attorney duly authorized, is binding on the
principal.*

Notice of protest addressed to the post office where the endorser usually receives his letters, is sufficient.

If the second of exchange be accepted, the holder may recover judgment on it, without accounting for the first of exchange.

APPEAL from the District Court of Concordia, *Wilson*, J.  *L. Junin*, for plaintiffs.  *Stacy* and *Sparrow*, for defendants.  Judgment of the late Supreme Court:

"This action is brought upon a protested bill of exchange for $10,876 28, drawn at Natchez on the 25th of June, 1838, by *Shipp, Ferriday & Co.*, on *Bullitt, Shipp & Co.* of New Orleans, payable eight months after date, accepted by the drawees, and endorsed by *John Routh* and *Austin Williams*, the payees and defendants; these endorsements purport to be made by *William Ferriday*, as their attorney in fact.  There was a judgment of nonsuit below, from which the plaintiffs have appealed.

The only questions which the case presents are: 1st. Whether the defendants had authorized *William Ferriday* to bind them as endorsers on this bill? 2d.  Whether they have been legally notified of its protest?  3d. Whether the plaintiffs can recover upon the second of a set of exchange, without accounting for the first?

I. The record shows that on the 28th and 29th of November, 1837, *Williams* and *Routh* executed special and separate powers of attorney to *William Ferriday*, of the city of Natchez, giving him the most extensive powers, and among others, "full power and authority for them. and in their name, or in the name and for the use and benefit of him, their said attorney, or for the use and benefit of, or in the name or names of any other person or persons whatsoever, to make, endorse, draw, accept, and negotiate all promissory notes, bills of exchange, drafts, and other securities, of any and every kind whatsoever," &c. These powers were acknowledged before *William Poindexter*, a notary in the parish of Concordia, who gave up the original acts, which, on the 2d of December, 1837, were deposited by *William Ferriday* in the office of *H. B. Cenas*, a notary public in New Orleans, who had them bound up in his notarial records. Copies of these powers, certified by *H. B. Cenas*, were annexed to the petition, and interrogatories were propounded by the plaintiffs to each of the defendants, to the following effect, to wit:  1.  "Is not the endorsement of your name on the bill of exchange described in and annexed to the foregoing petition, in the hand-writing of *William Ferriday*, and was not the same *William Ferriday* duly authorized and empowered by you to make said endorsement?"  2. "Did you not, in November, 1837, at Concordia, execute and sign your within power of attorney to the said *William Ferriday*, in presence of witnesses and of *William L. Poindexter*, notary public; and was not said power of attorney deposited by the said *William Ferriday*, by an authentic act of deposit, in the office of *Hilary B. Cenas*, notary public, at New Orleans, dated December 2d, 1837; and does not the annexed copy of said act of deposit of the document deposited, contain a true copy of the power of attorney granted by you to the said *William Ferriday*, in November, 1837?"

These interrogatories were no doubt propounded from an apprehension that the judge below might, as he did on the trial, and properly too, refuse to receive in evidence, copies that were not certified by the notary before whom the acts were passed, or by a power who was not the legal custodian of them, or authorized by law to give copies.  L. C., art. 2247.  In answer to the first interro-

gatory, *Austin Williams* said, that the endorsement of his name on the bill sued on, was in the hand-writing of *William Ferriday*, and proceeded thus: "Whether he was or not duly authorized by me to make said endorsement, is a legal question arising out of the construction of the power of attorney annexed to plaintiffs' petition, which I do not feel myself competent to decide."

To the second interrogatory, he answered: "I did in November, 1837, I believe, execute a power of attorney to *William Ferriday*, as stated in the plaintiffs' interrogatory, but do not know whether it was or not deposited in the office of *Hilary Cenas*, a notary public in New Orleans. I have not the original power of attorney, and cannot say whether the copy annexed to plaintiffs' petition is true or not."

There is an admission in the record, that *John Routh* would make to the first interrogatory the same answer as *Austin Williams* and that he would answer the second interrogatory in the affirmative.

The district judge considered the answers of *Austin Williams* as insufficient to prove that he had authorized *William Ferriday* to make the endorsement on the bill sued on, or to establish the genuineness of the power of attorney of which a copy was annexed to the petition; under this view of the effect of these answers, he excluded, as to *Austin Williams*, all the evidence offered by the plaintiffs to make out their case against him, but admitted it as to his codefendant, *Routh*.

We think that the judge erred. The answer of the defendant, *Williams*, to the first interrogatory, is not that explicit and categorical answer required by law. When a party's conscience is appealed to, he shall not be permitted to screen himself behind evasive answers and technicalities. The great advantage which such a proceeding gives him in establishing his defence, imposes upon him the corresponding obligation of answering fairly and directly. The question put to him was, whether he had authorized *William Ferriday* to make the endorsement sued on. Instead of answering that he did or did not so authorize him, he states that this fact, upon which he is required to answer and which is within his own knowledge, must depend upon the construction to be given to the power of attorney annexed to the plaintiffs' petition. Such a manifest evasion to answer a plain and direct question, might alone authorize us to consider the fact as confessed; but taking the answer as it is, it at least implies and admits the accuracy of the copy and the verity of the original power of attorney, which his codefendant admitted in a more fair and candid manner. The powers of attorney which are annexed to the petition, are moreover proven by *William L. Poindexter*, to have been the only powers executed before him by the defendants; he states that he gave up the originals, which he has since seen in the notarial records of *Cenas*, from which they could not be withdrawn, and that he compared these identical copies with the originals before they were sent up from New Orleans, and found them correct. Upon the whole, we are of opinion that the powers under which *William Ferriday* acted, are sufficiently proved, and that they were amply sufficient to authorize him to make the endorsements sued on.

II. On the day of its maturity, the bill was duly protested, and notice of protest was given by the notary of the bank to the defendants, in two letters written to each of them by that officer, and put into the post office of New Orleans: one of them was addressed to Natchez, Mississippi, the other to the "Parish of Concordia."

It is shown, that both *Routh* and *Williams* are residents of the Parish of Concordia; that during the winter, spring and fall months, they live on their plantations on Lake St. Joseph, and near Natchez in the summer; that in 1838 and 1839, there was no post office in that parish, the inhabitants of which received their letters through post offices in Mississippi, on the other side of the river, Fort Adams, Natchez, Rodney, or Grand Gulf; that the Parish of Concordia, as then constituted, was 135 to 140 miles in length, and Natchez nearly opposite the centre of the parish. Several witnesses of the defendants state, that their residence is only six or eight miles from Grand Gulf, while it is from fifty-five to sixty from Natchez; that Grand Gulf and Rodney are nearer to the majority of the population of Concordia, than Natchez; and that letters addressed to them through the Grand Gulf post office, were received by them. On the other hand, *Lafferandine*, for many years a clerk in the New Orleans post office, testifies, that letters simply directed to the Parish of Concordia, are always fowarded by that post office to Natchez. *Woodson Wren*, who was post master of Natchez in 1839, says, that the Natchez post office is the nearest to the majority of the people, and where the greater part of the inhabitants of Concordia received their letters during the years 1828 and 1839; that there was no post office in Concordia in those years, and the nearest one on the Mississippi side was Rodney, but Natchez was the most convenient and central one for the Parish of Concordia, the most business place, and the one of greatest resort. He further states, that both the defendants have been in the habit of receiving their letters from the post office at Natchez for the last seven years; that *John Routh* had a box at the Natchez post office, in which his letters were deposited, by his request, during the years 1838 and 1839, but that he does not recollect if *Williams* had a box. We have often held, that when it is shown that an endorser habitually receives his letters through the more distant post office, a notice given through it is good. *Bank of Louisiana* v. *Watson*, 15 L. R. 41. *Union Bank of Louisiana* v. *Brown*, 1 L. R. 107; and the cases of *Mead* v. *Carnal*, and *The Mechanics and Traders' Bank* v. *Jameson*, *Dix & Co.*, decided at this term.

But even could there be any doubt as to the sufficiency of these notices, we think that those addressed to them "at the Parish of Concordia," in pursuance of the provisions of the act of 1827, are good. As we said in the case of *Duncan* v. *Sparrow*, 3 R. R. 166, this statute requires two formalities: 1st, that the notice should be put into the nearest post office where the protest is made; and, 2dly, that such notice should be addressed to the endorser at his domicil, or usual place of residence. These requirements of the law have been complied with. But it is urged, that the direction "to the Parish of Concordia," is entirely too vague, when it is recollected that in 1839, the length of the parish was one hundred and forty miles; this would be true, if there had been any post office in the parish near the residence of the defendants, or if they had lived in any town or village of the parish. 16 L. R. 20. But there being no post office there, it was impossible to direct the notices otherwise than simply to the Parish of Concordia; had they been directed to Grand Gulf or Rodney, however near to *Routh* or *Williams'* houses, those places were not their residence or usual place of domicil, for they are in a different State; so, in the case of *Duncan* v. *Sparrow*, the notice was held to be bad, although directed to him at Natchez, the nearest post office to his residence, and that through which he received his letters, because it was not addressed to the place of his residence, "the Parish of Concordia." L. C. art. 42.

III. To provide against losses and accidents, a set of two or more bills of exchange are usually made out, but provision is made on the face of each bill, that it shall be paid only in case the others are unpaid. It is not to be presumed that a drawee will accept more than one bill of the set. In 13 Peters, 205, *Downs* v. *Church*, the same point being presented to them, the Supreme Court of the United States said : " We are of opinion that the plaintiffs are entitled to recover upon the second of the set without producing the first, or accounting for its non-production." We can come to no other conclusion in this case.

It is therefore ordered, that the judgment of the district court be reversed, and proceeding to give such judgment as should, in our opinion, have been rendered below.—It is ordered, adjudged and decreed, that the plaintiffs do recover of, and have judgment against, the defendants *in solido*, for ten thousand eight hundred and seventy-six dollars and twenty-eight cents, with interest at the rate of seven per cent per annum from the 28th of February, 1839, the day of protest, until paid, with costs in both courts.

---

## SAME CASE—ON A RE-HEARING.

THE judgment of the court, on a re-hearing, was pronounced by
EUSTIS, C. J.   The defendants were sued as endorsers of a bill of exchange drawn in June, 1838, by *Shipp, Ferriday & Co.*, of Natchez, payable eight months after date, on *Bullitt, Shipp & Co.*, of New Orleans, and by them accepted. The plaintiff was nonsuited in the court below, and on an appeal taken to the late Supreme Court, in 1843, the judgment of nonsuit was set aside, and judgment rendered against the defendants *in solido* for the amount of the bill, with interest and costs. That court granted a re-hearing. The case has remained since that event on the dead docket. It has recently been placed on the regular trial docket, and has been submitted to us on an argument, in writing, of the counsel for the plaintiff.

*Austin Williams* is dead, and his succession is not represented; the case, so far as his succession is concerned, remains in *statu quo*. The responsibility of *Routh* is alone the subject of our inquiry.

The endorsement of *Routh* was made under a power of attorney to *William Ferriday*, and we concur in the opinion of the court, that *Ferriday* had power to bind, and did effectually bind *Routh*, by the endorsement. *Reynolds* v. *Rowley*, 2d Ann. 894. In relation to the sufficiency of the notice of the protest of the bill to *Routh*, all doubt must disappear before the facts disclosed by the post master at Natchez. There was no post office at that time in Concordia. *Routh* was in the habit of receiving his letters, most of the time, at Natchez, and he had a box at the post office there for the reception of his letters.

A question was raised as to the right of the plaintiff to recover on the accepted second of the exchange, without accounting for the first. There can be no doubt as to the right to recover. *Downs* v. *Church*, 13 Peters, 205.

The judgment of the Supreme Court gave the plaintiff seven per cent interst. Our impression is, that five per cent is all the law allows.

The judgment heretofore rendered in this case, by the former Supreme Court, be affirmed against *John Routh*, abating two per cent of the interest.